JEREMY R. MORRIS, Esq.
Attorney at Law
PO Box 1296
Hayden, Idaho 83835
Tel. (208) 964-5878
jrmorris81@icloud.com
Idaho Bar No. 8500

Attorney for Plaintiffs
MR. JEREMY MORRIS, ATTORNEY PRO-SE LITIGANT & MRS. KRISTY MORRIS.

## U.S. DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| MR. JEREMY MORRIS & MRS. KRISTY MORRIS.<br><br>Plaintiffs,<br>v.<br><br>WEST HAYDEN ESTATES FIRST ADDITION HOMEOWNERS ASSOCIATION, INC., an Idaho Corporation.<br><br>Defendant. | Case No.:<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT & REQUEST FOR RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## I. PRELIMINARY STATEMENT

1. Plaintiffs Mr. and Mrs. Jeremy Morris, (together, "the Morris'") bring this civil action for compensatory and punitive damages under 42 U.S.C. §§3601, 42 U.S.C. §3604(b), 42 U.S.C. §3604(c), and 42 U.S.C. §3617, hereinafter, (the "Fair Housing Act"), and under Idaho Code §67-5909, (hereinafter, the "Idaho Human Rights Act,"), to redress discrimination on the basis of religion.

2. As alleged more fully below, the Defendant, West Hayden Estates First Addition Homeowners Association, (hereinafter, "the HOA" or "the BOARD"), unlawfully discriminated against the Morris' based on their religion. Jeremy and Kristy Morris made an offer to purchase

a home in West Hayden Estates HOA for the purpose of hosting an annual Christmas program. Immediately after making the offer, the Morris' contacted the BOARD to discuss the annual Christmas program. Rather than meeting with the Morris', the HOA responded by composing a certified letter stating that a Christmas show is offensive to non-Christians in the neighborhood and also threatened litigation. The BOARD also circulated a second letter containing knowingly false statements to every member of the association in an effort to dissuade the Morris' from going through with their home purchase. The Morris' also learned the HOA contacted the SELLERS of the home prior to closing. The HOA informed the SELLERS that a letter had been sent to the Morris family because the HOA did not want the Morris' beliefs pressed on others in the neighborhood. The HOA fostered a hostile atmosphere resulting in such episodes including, but not limited to: one neighbor threatening to have the Morris' murdered, another neighbor pounding a cane into the pavement many times at an annual members meeting shouting demands for the Morris' to "get the hell out," and threatening online Facebook posts including one as recently as December 14, 2016 which suggested the Morris' should be prepared to stock up on weapons at the local gun show. Despite having been informed of these incidents, the BOARD did nothing to de-escalate the hostile atmosphere which they had created.

    3. Defendant's conduct violates sections 42 U.S.C. §§3601, 42 U.S.C. §3604(b), 42 U.S.C. §3604(c), and 42 U.S.C. §3617 of the Fair Housing Act. The Defendant's conduct also violates Idaho Code §67-5909, also known as the Idaho Human Rights Act. Therefore, money damages should be awarded in accordance with the Prayer for Relief in Section V. of this Complaint

    4. The Plaintiffs request a trial by jury as to the issues of liability and compensatory and punitive damages.

## II. JURISDICTION and VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 3613(a).

6. Venue is proper under 28 U.S.C. §§ 1391(b) and (c). Defendant resides in this district, and the events giving rise to this Complaint occurred in this district.

## III. THE PARTIES

7. At all relevant times to this Complaint, the Plaintiffs have resided in Kootenai County, Idaho. Mr. and Mrs. Morris are aggrieved persons as that term is defined by the Act, 42 U.S.C., §3602(i), and have suffered harm resulting from the Defendant's conduct.

8. At all relevant times to this Complaint, Defendant West Hayden Estates First Addition Homeowners Association was an Idaho corporation that governed a housing development consisting of approximately 50 residential dwellings. The HOA Board was vested with the authority to make decisions on behalf of its members and it used its authority to undertake actions inconsistent with federal Fair Housing Laws and the Idaho Human Rights Act.

## IV. STATEMENT OF FACTS

9. Jeremy and Kristy Morris are married and have lived in Idaho since 2013.

10. On December 15-22, 2014, with the help of Candlelight Christian Fellowship, the Morris' held their First Annual Hayden Christmas program in the driveway of the home they were renting at 1473 W. Cardinal Ave., Hayden, Idaho 83835. The purpose of this Christmas program was to spread the Gospel and love of Jesus Christ to the community by raising funds for two local charities that aid children suffering from homeless or cancer.

11. On December 27, 2014, the Morris' contacted realtor Paul Sohrweide with Hope Realty in Coeur d'Alene to purchase a home for the expressed purpose of continuing their annual Christmas program. The Morris' specifically instructed Mr. Sohrweide to locate a residence best suited for hosting the Morris family's annual Christmas Program.

12. On December 31, 2014, after having reviewed the CCRs (See Exhibit 1 Attached) and having determined there was no prohibition against their planned Christmas program, Mr. and Mrs. Morris entered into a contract with Sellers Kris and Larry Brazeal (hereinafter, "SELLERS"), for the purchase of 13111 N. Ferndale Dr., Hayden, Idaho 83835 for $315,000.

13. On or about January 3, 2015, Mr. Morris contacted the West Hayden Estates HOA and spoke with HOA President Jennifer Scott so as to inform her that he had entered into a contract for the purchase of a home in the West Hayden Estates HOA and that he would be hosting an annual event from 6-8pm for 5 days. During this phone call, Mr. Morris offered suggestions to minimize any potential disruptions to the neighborhood that may result from future Christmas programs, including, but not limited to: utilizing buses to avoid any traffic congestion. Mr. Morris also pointed out that there were no rules in the HOA CCRs that prevented him from hosting this program, but that he wanted to be cordial and encourage members of the HOA to take part in the festivities if they so desired.

14. Mrs. Scott suggested Mr. Morris present the plan to the HOA Board and she setup a meeting for that purpose. Mr. Morris was advised that he would be called into the meeting, by phone, when they were ready to speak with him.

15. The Board held this meeting several days later, but refused to call Mr. Morris into the meeting. When Mr. Morris inquired as to why the Board did not call him during the meeting, the President stated that the Board was furious and would not meet or speak with him.

16. Mr. Morris informed Mrs. Scott that he would be proceeding with the purchase of the home as there was no rule against hosting a Christmas fundraiser, putting up Christmas lights, or any other relevant prohibition within the Covenants and Restrictions according to numerous attorneys that Mr. Morris had consulted.

17. On January 16, 2015, Mr. Morris received a certified letter from the HOA referencing "litigation." (See Exhibit 2, Attached). The letter stated, in part, "And finally, I am somewhat hesitant in bringing up the fact that some of our residents are non-Christians or of another faith and I don't even want to think of the problems that could bring up." The letter also mentioned a fear that the Morris Family Christmas show would bring "undesirables" to the neighborhood.

18. Mr. Morris contacted the HOA President and expressed his concerns about the certified letter with Mrs. Scott. Mrs. Scott admitted during this conversation that the HOA had indeed engaged in discrimination against the Morris family. Mrs. Morris was also concerned and became distressed and was advised by her Pastor, Paul Van Noy to not move to the home. (See Exhibit 17, Attached).

19. In another phone conversation, President Scott explained that when drafting the certified letter, it was originally written so as to greater emphasize religious objections to our Christmas program. She stated, "it was even worse before the letter was toned down."

20. On or about February 1, 2015, Mrs. Morris was informed by the SELLER, Kris Brazeal, that the HOA had drafted a letter about the Morris family and the Christmas program and was walking that letter around the neighborhood. Mrs. Brazeal stated that she believed she was required to share the existence of this new letter because the SELLERS did not want anything to "hinder the sale of our house." She stated that the letter being distributed to all of the

neighbors "did not paint the [Christmas show] in the best light." Mrs. Brazeal also relayed conversations she had with other neighbors including a realtor who shared Kris Brazeal's belief that the Morris family was being "discouraged from buying a house in the neighborhood."

21. During this same recorded conversation, Mrs. Brazeal informed Mrs. Morris that the HOA had contacted the SELLERS and notified them of the earlier, certified letter that was sent to the Morris family. The SELLER stated that the HOA told her that the HOA did not want the Morris' to "press their beliefs on others in the neighborhood." Mrs. Brazeal stated that from the way the HOA President described it, she believed "it sounded pretty prejudiced against the Christian religion." The SELLER also stated that she did not want the actions of the HOA to deter the Morris' from moving forward with the transaction due to the difficult time the SELLERS had in finding a buyer and the amount of time the house had sat on the market.

22. The letter described by the SELLER was delivered on February 4, 2015. (See Exhibit 3, Attached). The letter contained numerous knowingly false details about the event and called for an Emergency Meeting to be held on February 13, 2015 for members to vote on whether the event should take place.

23. On February 9, 2015, Jeremy Morris and his acting attorney, Richard Mast of the non-profit Liberty Counsel, a Florida-based religious liberties organization, drafted a letter which was mailed to every member of the HOA so as to correct the knowingly false allegations made by the HOA in their February 4 letter. (See Exhibit 4, Attached).

24. On February 13, 2015, the Emergency Meeting was held. Mr. and Mrs. Morris were not in attendance because they were not yet members of the Association, nor were they invited. At least three of Mr. Morris' future neighbors as well as the SELLERS informed Mr. Morris that no action was taken at the meeting after several people voiced concerns that the Board had acted

recklessly with regard to making religion a part of the discussion over whether the event should be held.

25. The Morris' closed on their home purchase on March 20, 2015. The Morris' received no contact from the HOA from March 20 until October 27, 2015.

26. On October 27, 2015, the Morris' received a demand letter from an attorney representing the HOA stating that the Christmas Charity Fundraiser will be "offensive to the senses." The demand letter asserted that if within ten days the Christmas lights covering the Morris home were not removed and if a statement were not made canceling the Christmas program, that the HOA would take legal action.

27. The Morris' contacted attorneys during this time who concluded that no provisions of the CCRs were implicated by the Christmas program and that the HOA was likely using concerns about "traffic" as a pretext to discriminate against the Morris family's decision to use their property to spread their Christian faith.

28. On October 30, 2015, Mr. Morris contacted Fox News about the ongoing efforts by the HOA to stop the Christmas program. On November 24, 2015, following a national news story (See Exhibit 5, Attached) and subsequent interviews by ABC, NBC, CBS, Huffington Post, Salon.com, USA Today, and numerous other news outlets, the HOA told the media it would not be pursuing legal claims against the Morris family.

29. From December 16-20, 2015, the Morris' held their Christmas program. Several attempts by HOA members to interfere with their program, include, but are not limited to: a videotaped death threat by one neighbor, coordinated efforts calling sheriff's deputies numerous times for legally parked vehicles on public side streets, and documented examples of neighbors using foul language in the presence of children. (See Exhibit 6-10, Attached).

30. The Morris' sought the aid of Alison Brace of the Intermountain Fair Housing Counsel. On January 20, 2016, Ms. Brace stated to Mr. Morris over the phone that, at least in part, the actions taken by the HOA were discriminatory. Ms. Brace subsequently sent Mr. Morris a letter stating that due to funding issues, the Fair Housing Counsel was focused on "larger companies such as property managers who manage a lot of properties" but that Mr. Morris was free to pursue his own civil litigation against the Defendant. (See Exhibit 11, Attached).

31. Following the Christmas program held in the West Hayden Estates HOA, the BOARD circulated a letter on February 15, 2016 (See Exhibit 12, Attached), to every residence in the neighborhood alleging, among other things, that children peed in the snow during the Christmas program. The letter also alleged that the street was blocked despite video taken during the program that contradicted this claim. (See Exhibit 16, Attached). Mr. Morris confronted the incoming HOA President about the February 2016 letter.

32. Incoming 2016 HOA President and former Vice President Ron Taylor told Mr. Morris that the HOAs failed attempt to stop the Christmas program through the threat of legal action was not taken on the basis of rule violations, but rather because some members of the association "don't like Christmas."

33. On February 16, 2016, Mr. Morris' neighbor "Angie" explained in a recorded interview that she spoke with former HOA President Jennifer Scott and asked Mrs. Scott what CCRs the Morris' violated. The former President admitted that no CCRs were violated. Angie asked why it was then that a lawyer was hired and legal action threatened to stop the Christmas program. Angie was told it was because they didn't want it in their neighborhood.

34. On December 14, 2016, the Morris family hosted their second Christmas program second in the West Hayden Estates neighborhood. (See Exhibit 13, Attached). On the same day, a threat was posted to the Christmas show's event page that Mr. Morris should stock up on guns at a local gun show. This threat was reported to Sheriff's deputies. That threat was later provided to the incoming 2017 President of the HOA and no action was taken.

35. From December 14-18, 2016, members of the HOA, including members of the BOARD again interfered with the Christmas program by such methods as: throwing snowballs at buses, pretending to be hit by a bus while "fake-plowing" the road at 8pm without the plow running, boarding a bus and yelling at riders, and trespassing.

*The HOA Engaged in Disparate Treatment by Not Enforcing Provisions of the CCRs Against Other Members With Clear Violations, While Taking Aggressive Action Against the Plaintiffs Not in Violation*

36. SELLERS stated as recently as January 12, 2017, that massive football games were held at 13111 N. Ferndale Dr., Hayden, ID 83835 for years prior to the SELLERS transferring ownership of the home to the Morris family. (See Exhibit 15, Attached). SELLERS never received a single letter or any other contact from the BOARD in their time living the residence from 2001-2015. Former HOA member "Angie" confirmed in an audio recording in February 2016 that the HOA never expressed any concern about the massive traffic created by football parties prior to the Morris family moving to the neighborhood.

37. Several members maintain more dogs than they are permitted under the rules of the CCRs. These dogs are walked daily through the neighborhood in full view and without fear of violation despite their clear prohibition. (See Exhibit 14, Attached). Other members have

installed shops, asphalt driveways, and copper dormers in violation of the rules without any intervention by the HOA.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### For Violations of 42 U.S.C. §3604

38. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 37 of this Complaint as if fully set forth in this paragraph.

39. 42 U.S.C. §3604(b) prevents any person from discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. The Defendant violated the Fair Housing Act by discriminating against Mr. and Mrs. Morris' religious beliefs through a systematic strategy to first dissuade the Morris' from moving to their home at 13111 N. Ferndale Dr., Hayden, ID 83835 under the threat of litigation, then by dissuading the SELLERS from selling the property to the Morris family by contacting the SELLERS on or about January 20, 2015, and then by creating a hostile living environment in an effort to discourage the Morris family from continuing to live in the association. The HOA created a hostile living environment both by directly engaging with neighbors through letters and unofficial meetings and also indirectly through their inaction as the Morris' faced both verbal and physical threats by neighbors.

40. 42 U.S.C. §3604(c) prevents any person from making, printing, or publishing or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based

PLAINTIFF'S ORIGINAL COMPLAINT & REQUEST FOR RELIEF
10

on among other things, religion. The HOA printed a statement in the form of a certified letter which indicated a preference for non-religious homeowners.

41. The Defendant's conduct had a discriminatory effect on the Plaintiffs due to their religion.

42. The discriminatory actions of Defendants were intentional, willful, and taken in disregard of the rights of Mr. and Mrs. Morris.

## SECOND CAUSE OF ACTION

### For Violations of Idaho Code §67-5909

43. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 42 of this Complaint as if fully set forth in this paragraph.

44. Defendant violated Idaho Code §67-5909(8)(b) otherwise known as the Idaho Human Rights Act when Defendant unlawfully discriminated against Mr. and Mrs. Morris by interfering with the privileges of a real estate transaction and in the furnishing of services in connection therewith.

45. Defendant violated Idaho Code §67-5909(8)(f) when Defendant printed posted, circulated, mailed, and caused to be published a statement which indicates, directly or indirectly, an intent to make a limitation, specification, or discrimination with respect thereto.

## THIRD CAUSE OF ACTION

### For Violations of 42 U.S.C. §3617

46. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 45 of this Complaint as if fully set forth in this paragraph.

47. Under 42 U.S.C. §3617, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted by the Fair Housing Act.  The Defendant intimidated Mr. & Mrs. Morris by sending a certified letter threatening litigation during a real estate transaction that referenced the impact that allowing a Christian holiday to be celebrated would have on non-Christians that live in the neighborhood.  Use of the words, "I don't even want to think of the problems that could bring up" were words intended to intimidate the Defendant.  The Defendant interfered with the transaction by contacting the Sellers and attempting to dissuade them from selling to the Plaintiffs.  Defendant also interfered with the exercise and enjoyment of the Morris family's property rights upon completing the sale as the Plaintiffs have constantly lived in fear, keeping their doors locked at all times, and obtained concealed carry permits for protection.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for a judgment against Defendants for:

1. Injunctive and equitable relief as the Court deems appropriate including;
    i) De-annex the Morris property from the HOA
    ii) Requiring Defendant to attend training in Fair Housing and anti-Discrimination.
2. Compensatory damages to be paid by the Defendant, according to proof at trial, including awarding such damages as will compensate Mr. and Mrs. Morris fully for their shock, humiliation, embarrassment, inconvenience, and economic loss caused by Defendant's discriminatory conduct pursuant to 42 U.S.C. §3612(o)(3) and 42 U.S.C. §3613(c);

3. Awarding punitive damages to the Plaintiffs in the amount of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000) pursuant to 42 U.S.C. §3612(o)(3) and 42 U.S.C. §3613(c). Defendant's conduct demonstrates a reckless disregard for those of certain religious backgrounds and is contrary to both federal and state law. The acts and omissions described above were willful and performed with actual or implied malice. To date, the Defendant has never issued so much as an apology and continues, through direct and indirect actions, to create an atmosphere incompatible with the quiet use and enjoyment sought by Mr. and Mrs. Morris. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance;

4. Costs and attorneys fees of this lawsuit, with interest pursuant to 42 U.S.C. §3612(p);

5. Granting such further relief as this Court may deem just and proper.

Dated: January 12, 2017

>  /s/ Jeremy Morris
> Jeremy Morris, Esq.
> Attorney at Law
> Attorney for Plaintiffs / pro-se litigant
> JEREMY AND KRISTY MORRIS