UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MR. JEREMY MORRIS and MRS. KRISTY MORRIS,<br><br>    Plaintiffs,<br><br>    v.<br><br>WEST HAYDEN ESTATES FIRST ADDITION HOMEOWNERS ASSOCIATION, INC.,<br><br>    Defendant. | Case No. 2:17-cv-00018-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it Defendant's Motion to Dismiss (Dkt. 5). The motion is fully briefed and before the Court, and the Court finds this matter appropriate for decision without oral argument. For the reasons explained below, the Court will grant the Motion in part and deny in part.

# BACKGROUND

Plaintiffs Jeremy and Kristy Morris filed this housing discrimination lawsuit against Defendant West Hayden Estates First Addition Homeowners' Association, Inc. (HOA) alleging that the HOA discriminated against them on the basis of their religion, in violation of state and federal law. The Morrises are Christian, and they host an annual Christmas fundraiser at their home. *Complaint* ¶ 10, Dkt. 1. In December, 2014, they

entered into a contract for the purchase of a home in the West Hayden Estates subdivision which they believed would be suitable for hosting this annual event. *Id.* ¶ 12.

Shortly after entering into the contract, but prior to their purchase, the Morrises reached out to the West Hayden Estates First Addition Homeowners Association, Inc. (HOA) to notify them about both their intent to buy a home within the subdivision, as well as to hold a Christmas fundraiser at the new home. *Id.* ¶¶ 12, 13. On or about January 15, 2015[1], the HOA sent a letter to inform the Morrises that they believed that the fundraiser would violate certain provisions of the Covenants, Conditions, Restrictions and Easements for West Hayden Estates First Addition (CCRs). *Id.* ¶ 17. The HOA also said that they knew that some members of the community were not Christian, and that they were concerned that the fundraiser might create an issue with those residents. *Id.* at Ex. 2. The HOA then sent out a letter to the other residents of the community, to inform them of the Morrises' plans for a Christmas fundraiser, and held a meeting for the members of the community to discuss those plans. *Id.* ¶¶ 20, 24. The Morrises sent out a letter in response to the HOA's letter. *Id.* ¶ 23.

The Morrises purchased their new home on March 20, 2015. *Id.* ¶ 25. A few months later, on October 27, 2015, the HOA sent a letter to the Morrises informing them that proceeding with the Christmas fundraiser would result in the HOA taking legal

---

[1] While the certified letter itself is dated January 13, 2014, the United States Postal Service stamp contains the date of January 15, 2015. *See Compl.* Ex. 2 at 2. The timeline of events also suggests that the letter was sent in 2015, not 2014. For purposes of this motion, the Court will assume the letter was sent in 2015.

action. *Id.* ¶ 26. The Morrises proceeded with their purchase, but the HOA did not ultimately file a lawsuit. *Id.*

The Morrises allege that, from the first fundraiser on, the HOA waged a war of harassment against them by encouraging members of the HOA to engage in harassing behaviors, such as threatening the Morrises on the street, threatening them on Facebook, and interfering with the Christmas fundraiser. *Id.* ¶¶ 29, 31, 34, 35. According to the Morrises, this caused them a great deal of emotional distress. *Id.* ¶ 47, *Prayer for Relief* ¶ 2.

The Morrises claim that, even before they purchased their home, the HOA admitted that they were discriminating against the Morrises because of their religion. *Id.* ¶ 18. The Morrises also claim that the HOA admitted that complaining about the fundraiser was pretextual, and that the HOA intentionally discriminated against the Morrises on the basis of their religion. *Id.* ¶¶ 18, 19, 21, 32, 33.

The Morrises filed this action on January 13, 2017, under the Idaho Human Rights Act and the federal Fair Housing Act (FHA). *Complaint*, Dkt. 1. The HOA's Motion to Dismiss was filed shortly thereafter.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule

12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ANALYSIS

1. **Idaho Human Rights Act Claim**

The Idaho Human Rights Act (IHRA), Idaho Code § 67-5908(2) states, "A complaint must be filed with the [Idaho Commission on Human Rights] as a condition precedent to litigation." That is, prior to filing a civil action to privately enforce the Idaho Human Rights Act, a person must pursue an administrative remedy by filing a complaint with the Idaho Commission on Human Rights. The Morrises have not filed this administrative complaint. Because they failed to exhaust their administrative remedies, as required under the IHRA, the Court must dismiss the Morrises' state law claim.

2. **Fair Housing Act Claims**

The Morrises have brought three claims under the Fair Housing Act, 42 U.S.C. §§ 3601–3631. The first claim is brought pursuant to 42 U.S.C. § 3604, which prohibits discrimination in the sale or rental of housing on the basis of "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The second claim relies upon provisions in the same section prohibiting any publication which indicates a housing preference against members of any protected class. 42 U.S.C. § 3604(c).[2] The third claim is brought pursuant to 42 U.S.C. § 3617, which prohibits coercion, intimidation, threats, or interference with any person in the exercise or enjoyment of rights granted by the

---

[2] The Morrises' allege discriminatory conduct which occurred after they purchased their home. While initially a matter of debate, the Ninth Circuit has held that the FHA reaches such post-acquisition discrimination. *See The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009).

FHA, including § 3604. For the reasons stated below, the Court will deny the motion as to all three claims.

### A. Claim under § 3604(b)

A plaintiff can establish an FHA discrimination claim under a theory of disparate treatment or disparate impact. *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997). Here, the Morrises rely on a disparate treatment theory. To establish their prima facie claim, therefore, the Morrises must show that an "invidious discriminatory purpose was a motivating factor" behind the HOA's actions. *Ave. 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 504 (9th Cir.), *cert. denied*, 137 S. Ct. 295 (2016) (citations omitted). "A plaintiff does not have to prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a 'motivating factor." *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015) (citations omitted).

The Morrises allege that the HOA intentionally discriminated against them in the acquisition and enjoyment of their home because of their religion. Specifically, they allege that the HOA (1) attempted to dissuade their family from purchasing a home in the neighborhood, and (2) fostered a hostile atmosphere to discourage the Morris family from continuing to live in the neighborhood. *Compl.* ¶ 39. They also provide some evidence that their religion was a motivating factor in the HOA's actions. For example, the Morrises claim that, on multiple occasions, HOA board members admitted that their actions were based on the Morrises' religion. *Compl.* ¶¶ 18, 19, 21, 32, Dkt. 1. They also submitted a copy of a letter sent to them from the HOA, in which the association stated:

"some of our residents are non-Christians or of another faith and I don't even want to think of the problems that could bring up." *Compl.*, Ex. 2. Such evidence, if believed, is sufficient to plausibly state that the HOA's actions were motivated by the Morrises' religion. The Morrises have also claimed that they have been damaged in ways that can be remedied under § 3613(c). *Id.* at *Prayer for Relief* ¶ 2 (noting emotional distress and economic damages). Because the Morrises have outlined a plausible claim under § 3604 of the Fair Housing Act, the Defendant's Motion to Dismiss is denied.

### B. Claim under § 3604(c)

The Morrises also bring a claim under 42 U.S.C. 3604(c), asserting that the HOA printed a certified letter indicating a preference against Christians. Section 3604(c) makes it unlawful to "make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . religion." Only publications that relate to the sale or rental of a dwelling are actionable under this section. *See Hayden Lake Rec. Water and Sewer Dist. v. Haydenview Cottage, LLC*, 835 F. Supp. 2d 965 (D. Idaho 2011). This means that the only publication that is potentially actionable under § 3604(c) is the certified letter the HOA sent to the Morrises on January 15, 2015, prior to their purchase. *See Compl.* Ex. 3.

The HOA argues that the certified letter was not sent "with respect to the sale or rental of a dwelling" because the HOA was not involved in the actual sales transaction of Plaintiffs' home. However, the statute is not limited, on its face, to publications by a landlord or seller. Moreover, a number of courts have entertained § 3604(c) claims based

upon publications from homeowner associations such as the Defendant here. *See, e.g., Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463-LM, 2017 WL 1051001, at *1 (D.N.H. Mar. 20, 2017) (condominium association newsletter alleged to indicate a preference against certain handicaps); *Llanos v. Estate of Cohelo*, 24 F. Supp. 2d 1052, 1060 (E.D. Cal. 1998) (apartment complex rules alleged to discriminate against children); *see also Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir. 1991) (applying § 3604(c) to newspaper publisher that printed allegedly discriminatory housing advertisements). Here, the Court finds that the letter was sufficiently related "to the sale or rental of a dwelling" insofar as it related to the Morrises' intent to purchase a home in the West Hayden Estates neighborhood.

The question, then, is whether the HOA's letter communicates an impermissible preference or discrimination. "[E]very circuit that has considered a claim under section 3604(c) has held that an objective 'ordinary reader' standard should be applied in determining what is 'indicated' by [a notice, statement, or advertisement]." *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995) (collecting cases). The Court has doubts as to whether an ordinary reader would interpret the HOA's letter, without more, as communicating a preference for non-Christians homeowners in the West Hayden Estates neighborhood. However, at least one Circuit has suggested that "[e]vidence that the author or speaker intended his or her words to indicate a prohibited preference" may be used to buttress a claim under § 3604(c), where the surrounding context suggests that the publication was intended to convey the unlawful preference. *See*

*Jancik*, 44 F.3d at 556 (7th Cir. 1995). As stated above, the Morrises have alleged additional evidence suggesting that the letter was subjectively intended to discourage the Morrises from buying a home in the neighborhood, on the basis of their religion. In light of the obligation to construe the complaint liberally, the Court concludes that the Morrises have stated a plausible claim under § 3064(c) based on the HOA's January 15, 2015 letter.

### C. Claim Under § 3617

The Morrises claim that the HOA has violated their rights under 42 U.S.C. § 3617, which states,

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. As used in § 3617, the term "interference" has been "broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws," including protections against housing discrimination. *Id.* (citing *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994). To establish a prima facie case under this provision, "a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

Here, Morrises allege the HOA interfered with the purchase of their home because of their religion, by attempting to dissuade the sellers from transacting with the Morrises, *Compl.* ¶ 21, and sending a threatening letter, *Compl.*, Ex 2. The Morrises also claim that the HOA has been harassing them since they first held their Christmas fundraiser. *Id.* ¶¶ 29, 31, 34, 35. Therefore, the Morrises have plausibly alleged that (1) they were engaged in the protected activity of purchasing and enjoying a home free from religious discrimination, (2) the HOA threatened, intimidated, and interfered with their enjoyment of those rights, and (3) those actions caused them damage. Because the Morrises have stated a plausible claim under § 3617, the Defendant's Motion to Dismiss that claim is denied.

## CONCLUSION

For the foregoing reasons, the Court will grant the HOA's Motion to Dismiss as to the Idaho Human Rights Act (IHRA), as the Morrises have failed to exhaust their administrative remedies as required under the IHRA. However, the Court will deny the Motion to Dismiss as to the Morrises' claims of discrimination under the Fair Housing Act (FHA).

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 5) is **GRANTED** as to Plaintiff's Idaho Human Rights Act claim. The claim is dismissed without prejudice.

2. Defendant's Motion to Dismiss (Dkt. 5) is **DENIED** as to Plaintiff's Fair Housing Act claims.

DATED: August 24, 2017

B. Lynn Winmill
Chief Judge
United States District Court