Brindee Collins
VIAL FOTHERINGHAM LLP
6126 W State St., Suite 312
Boise, Idaho 83703
Phone: (208)392-1400
Fax: (208)629-4567
ISB # 9216
Brindee.collins@vf-law.com
Attorneys for Defendant/Counter-Claimant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MR. JEREMY R. MORRIS
MRS. KRISTY MORRIS

Plaintiffs/Counter-Defendant,

v.

WEST HAYDEN ESTATES FIRST ADDITION HOMEOWNERS ASSOCIATION, INC., an Idaho Corporation

Defendant/Counter-Claimant.

AFFIDAVIT OF CHUCK NORLIN

Civil No. 2:17-CV-00018-REB

I, CHUCK NORLIN, certify and declare under penalty of perjury pursuant to 28 U.S.C. §1746, of the laws of the United States of America, that the following statements are true and correct and based upon my personal knowledge:

1. I am over the age of 18 and competent to testify to the following.
2. I am currently a member of the West Hayden Estates First Addition Homeowners Association, Inc. (the "Association") and have been since December 11, 2015.
3. I am currently a member of the Board of Directors of the Association. I have served as a Director and the President of the Association since January 1, 2017.
4. As President of the Association, I am familiar with the records, activities, procedures, and history of the Association and am able to testify to the following.
5. I am familiar with Jeremy Morris, and the Jeremy Morris and Kristy Morris Christmas fundraising program, and the circumstances surrounding their dispute with the Association.
6. A true and correct copy of the Declaration Establishing Covenants, Conditions, Restrictions and Easements for West Hayden Estates First Addition (the "Declaration") is attached hereto as Exhibit A.

7. A true and correct copy of the Association's corporate Bylaws are attached hereto as Exhibit B.

8. A true and correct copy of the Association's enforcement policy/resolution is attached hereto as Exhibit C.

9. Mr. and Mrs. Morris applied to the Association for permission to hold their Christmas program and were denied, and have never requested or obtained a variance for the program.

10. Mr. and Mrs. Morris did not seek de-annexation through the procedure laid out in the Declaration, therefore Mr. & Mrs. Morris did not obtain the required approval of 75% of the lot owners in the subdivision to allow them de-annexation.

11. No owners in the subdivision have expressed religious animosity to myself or the Board of Directors about Mr. and Mrs. Morris or their Christmas program.

12. To the best of my knowledge, the Board of Directors did not consider Mr. and Mrs. Morris' religion in determining the Christmas program would be a violation of the Declaration. The meeting minutes do not reflect any such consideration.

13. The Association, acting through the Board, did not and has never intentionally discriminated against Mr. and Mrs. Morris on the basis of their religion, and the records and documents of the Association support that fact.

14. The Board of Directors has not condoned, sanctioned, encouraged, conducted or participated in any threats, harassment, dispute, or personal conflict with Mr. and Mrs. Morris that may have created a hostile environment for them.

15. In my observation, any conflicts that Mr. and Mrs. Morris have been involved in as they relate to the program, relate not to Mr. and Mrs. Morris' religion or the religious nature of the show, but to their negative quarrelsome actions, behavior, attitude, undue demands and statements.

16. I am myself of the Christian faith and practice that faith regularly. I have expressed my faith to Mr. Morris on more than one occasion.

17. I have personally attended and observed the Morrises' Christmas fundraising program in both 2015 and 2016.

18. In my interactions with Mr. Morris, he has been perpetually difficult, has constantly threatened me personally, and the members of the Board, with litigation and uses his position as an attorney to intimidate and threaten people, and seems to want to have the terms of the Declaration and the policies of the Association adjusted to meet his personal needs.

19. In an early meeting with Mr. Morris at his home, prior to my election to the Board, I assured Mr. Morris that I did not hold any position or opinions in regard to his Christmas program, and he stated "Okay, I won't sue you then," and turned to another person, whom he identified as a "bodyguard", and exclaimed "We won't sue him, put him on the list." Mr. Morris then proceeded to explain to me his potential legal claims and plans to sue the Association and its members.

20. In subsequent conversations over the course of the next months, Mr. Morris stated that he had plans to sue an 81 year old neighbor whom he had observed with three

tiny dogs; a neighbor with an asphalt driveway; a neighbor with a "metal" roof; and that his wife wanted him to punish people for objecting to his program by suing them.

21. After my election to the Board of Directors, Mr. Morris visited my home (January 3 of 2017) and discussed his issue with me. During a long conversation, Mr. Morris again expressed his plans to sue the Association and its members if the Association did not release him from the Declaration, or de-annex him. Mr. Morris requested he be de-annexed from the Association so that the Association would not bother him about his Christmas show as the CC&Rs did not apply to his show, and requested that I "handle that". I explained to Mr. Morris that if he wanted to be de-annexed that it would be his responsibility to contact the members and request a meeting to consider his de-annexation and request their vote to allow that. I also stated to Mr. Morris that, should he do that, I would call the meeting and express to the members the purpose of the meeting and call for the vote. Mr. Morris declined the process, said he would sue, and indicated that his lawsuit would be an "atomic blast," that he would "bring hell" to the neighborhood, and that he would release a multitude of "negative, damaging" information to the media and sue for $250,000-$500,000.00, and when he won that lawsuit he would then sue everyone in the association for every CC&R violation.

22. During this conversation, I asked Mr. Morris to email me his requests, which he did. A copy of this letter is attached hereto as Exhibit D.

23. The Board assessed the situation, consulted legal counsel, and determined that the relief requested by Mr. Morris was not legally possible or appropriate. Mr. Morris then chose to file suit.

24. In my personal experiences with him, both as an owner and as President of the Board of Directors, Mr. Morris mentioned suing the Association multiple times, and used the word lawsuit multiple times in each conversation.

25. I retired after thirty years in a very difficult profession, which focused on negotiation and customer issue resolution, and was highly successful in resolving dispute and reaching solutions in difficult situations. Only a few times in my career did I feel unusually threatened or intimidated by someone. However, Mr. Morris, in my experiences with him, abused his position as an attorney, and was threatening to the point that I was not comfortable conversing with, or attempting to negotiate with him. Mr. Morris frequently stated to me, without provocation, and to other members of the board and the Association, in my presence; "I am an attorney, I can sue you".

26. Mr. Morris has encouraged an environment of hostility and conflict in the West Hayden Estates Subdivision and the Hayden community as a whole, and has enflamed anger and hostility towards the Association.

27. I have personally observed the Christmas program. It incorporates excessively bright lights that can be seen from far away, causes major, constant traffic congestion issues, and is a nuisance to the neighborhood. The Board of Directors, acting in accordance with the Bylaws, has exercised its authority to determine that the program is in violation of the terms of the Declaration as a result of these observable characteristics.

By: _____
Chuck Norlin

SUBSCRIBED AND SWORN to before me this 5th day of January, 2017, by Chuck Norlin who is known to me, or who presented documentation sufficient for me to verify his identification.

Brandi Christina Loudon _____
Notary Public
My Commission Expires: 06/22/2023

State of Idaho )
                ) ss
County of Shoshone )

BRANDI CHRISTINA LOUDON
Notary Public
State of Idaho